**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ___3/31/22___

-----------------------------------------------------------------x

JASMIN AUREA MARCIAL,                          :
                                               :
                          Plaintiff,           :
                                               :        20-cv-06170 (ALC)
             -against-                          :
                                               :        **OPINION & ORDER**
ANDREW M. SAUL, COMMISSIONER OF SOCIAL:
SECURITY,                                      :
                                               :
                          Defendant.           :
-----------------------------------------------------------------x

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff Jasmin Aurea Marcial ("Plaintiff" or "Marcial") brings this action challenging the

Commissioner of Social Security's final decision that Marcial should be entitled Supplemental

Security Income under the Social Security Act. Currently pending are the cross motions for

judgement on the pleadings pursuant to Fed. R. Civ. P 12(c). ECF Nos. 15 and 17. The Court has

considered the parties' submissions and for the reasons set forth below, Plaintiff's motion is

DENIED, and Defendant's motion is GRANTED.

## PROCEDURAL HISTORY

On May 26, 2017, Plaintiff filed an application for Supplemental Security Income benefits.

R. 10.[1] Plaintiff alleged disability beginning on January 1, 2014. *Id*. Plaintiff's claim was initially

denied on August 15, 2017. *Id.* On September 26, 2017, Plaintiff requested a hearing in front of

the Administrative Law Judge ("ALJ"). R. 112. Plaintiff appeared and testified on July 12, 2019.

R.10. An impartial vocational expert, Melissa J. Fass-Karlin, testified along with Plaintiff. *Id.* The

ALJ found that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Social Security Act,

---

[1] "R" refers to the Certified Administrative Record filed at ECF No. 12. Pagination follows original pagination
in the Certified Administrative Record.

and therefore should not be entitled to Supplemental Security Income benefits.[2] R. 22. Administrative Appeals Judge Pinkus found no reason under the rules to review the Administrative Law Judge's decision and denied appellate review of the decision. R. 1. Plaintiff brought this action challenging the Commissioner of Social Security's ("Commissioner") final decision that she should not be entitled Supplemental Security Income under the Social Security Act. On April 20, 2021, Plaintiff filed a motion pursuant to Fed. R. Civ. P 12(c) for judgment on the pleadings. ECF No. 15. On June 22, 2021, Defendant filed a cross-motion pursuant to Fed. R. Civ. P 12(c). ECF No. 17. Plaintiff filed a reply in further support of Plaintiff's Motion for Judgment on the Pleadings to Defendant's cross-motion. ECF No. 19.

## FACTUAL BACKGROUND

### I.    Non-Medical Background

### A.  July 12, 2019 Hearing

#### 1.  *Plaintiff's testimony*

On July 12, 2019, Plaintiff appeared for a hearing in front of the ALJ and testified to the following facts. R. 60. Plaintiff was born on August 26, 1982. At the time of the hearing, she resided in the Bronx with her wife. R. 61. Marcial did not obtain a GED and was not working at the time of the hearing. *Id.* Plaintiff stated that she has four children, who have been placed with other families. R. 62. Plaintiff was involved in a mental health program which provided her housing. R. 68.

Plaintiff spends most of her day in bed. R. 73. She cannot watch TV for long periods because she has trouble focusing. R. 75. Plaintiff suffers from anxiety. R. 76. Plaintiff does not have friends and does not socialize. *Id.* She has trouble sleeping and misses appointments because

---

[2] Plaintiff does not dispute the ALJ's finding regarding Plaintiff's physical disability claim. The Court will not address the evidence on this issue.

she "does not want to do anything." R. 77. Plaintiff has memory problems, nightmares, and flashbacks. *Id.*

### 2. *Vocational Expert Testimony—Melissa Fass-Karlin*

At the July 12, 2019 hearing, Melissa Fass-Karlin, a vocational expert, testified before the ALJ. R. 80. Fass-Karlin was called on by the Social Security Administration to provide expert testimony for vocational rehabilitation. R. 250. When asked if a hypothetical claimant of Plaintiff's age, education, work experience, and situation could perform any unskilled jobs, Fass-Karlin noted that such a hypothetical claimant had the ability to perform work-related mental and physical activities including sitting for six hours; standing for six hours; walking for six hours; lifting up to twenty pounds occasionally and ten pounds frequently; avoiding unprotected heights or hazardous machinery; avoiding kneeling or crawling; avoiding climbing ropes, ladders, or scaffolds; and occasional close interpersonal contact with supervisors and coworkers. R. 81. Fass-Karlin testified that the hypothetical claimant could perform work as a mail clerk, laundry worker, document preparer, cutter and paster, and table worker. R. 82.

When asked if there were available jobs for a hypothetical claimant who could not tolerate workplace stress, Fass-Karlin testified that there are no jobs such a hypothetical claimant could perform. R. 82-83. When asked if there were available jobs for a hypothetical claimant who could not remember, understand, and carry out simple instructions, Fass-Karlin explained that there was no work for that claimant to perform. R. 83.

### B. Function Report

Marcial's case manager Tanaisha Cook completed a third-party function report on May 24, 2017. R. 201. Cook explained that Plaintiff's conditions affect her sleep because she "has racing thoughts and things become too overwhelming." R. 202. Cook noted that Plaintiff had no problem

with personal care because she did not need any reminders to take care of personal needs, grooming or taking medication. R. 202-03. Ms. Cook stated that Plaintiff is able to do laundry, sweeping, and mopping for about one to three hours, three times a week, and she does not need encouragement to perform these tasks. *Id.* Plaintiff goes outside alone two to three times a week by walking and using public transportation. R. 204.

Cook noted that Plaintiff shops in stores for about one to three hours, two to three times a month. *Id.* Cook explained that Plaintiff is able to pay bills, count change, handle a savings account, and use a checkbook/money order, but has been unable to do so since the onset of her mental health conditions. *Id.* Cook noted that Plaintiff does not spend time doing social activities, including spending time with others, because she has trouble getting along with others as she feels people expect too much from her. R. 205-06.

Cook shared that Plaintiff spends most of her time at home alone unless she needs to go outside because she does not "do well in situations where a lot of people are around." R. 206. Cook listed the following functions that are limited by Plaintiff's illnesses, injuries, and conditions: lifting; squatting; bending; reaching; walking; kneeling; stair climbing; memory; completing tasks; concentration; following instructions; and getting along with others. R. 206. Cook explained that Plaintiff suffers from major depression disorder, unspecified personality disorder, panic attacks, learning disability, bipolar disorder, epilepsy, asthma, anxiety, and PTSD, "which makes it extremely difficult for her to do the above activities." R. 206.

Cook stated that Marcial has difficulties paying attention, following instructions, and finishing what she starts. *Id.* Plaintiff also has issues with authority figures and has difficulties taking orders from people. R. 207. Cook reported that Plaintiff was fired from a job with Fresh

Direct due to her challenges getting along with others. *Id.* Cook noted that Plaintiff does not handle stress or changes in routine well. *Id.*

### C. Disability Report

Plaintiff's disability report indicated that she suffers from the following conditions: major depression disorder; unspecified personality disorder; panic attack; learning disability; ADHD; bipolar disorder; epilepsy; asthma; anxiety; and PTSD. R. 193. The disability report records Plaintiff's last date of employment as January 1, 2014. *Id.*

### D. Courtney Glashow—Social Worker

Plaintiff visited social worker Courtney Glashow on May 19, 2017. R. 1003. Glashow addressed Plaintiff's bipolar affective disorder and moderate depression. R. 1004. Plaintiff reported to Glashow that she was taking her medication and experiencing feelings of agitation, nervousness, anxiety, depressed mood, memory loss, labile, difficulty with concentration, sleep disturbances, and hyperactivity. *Id.* Glashow instructed Plaintiff to reflect on their session and address the following goals: stabilizing moods to regain custody of her children; attend mental health visits; and do one to two new coping skills weekly to feel more relaxed. *Id.*

### E. Lesley Kuchek, LCSW-R

On March 5, 2018, social worker Lesley Kuchek met with Plaintiff. R. 1084. Plaintiff reported periods of depression and increased energy and agitation since the age of 17. R. 1081. Plaintiff reported that when she feels depressed, she isolates, stops eating, stops bathing, and cries a lot. *Id*. She reported racing thoughts, inability to focus, irritation, and aggression. *Id*. Kuchek summarized that Plaintiff has a history of depression, bipolar disorder, and drug abuse. R. 1084. She scheduled Plaintiff for a psychiatric evaluation. R. 1084.

**F. Cynthia Glickstein, LCSW-R**

On April 18, 2018, Plaintiff had a session with social worker Cynthia Glickstein. R. 114. Glickstein summarized that Plaintiff reported that she was taking her medication and feeling relatively stable with improvement in mood, attention, focus, and anxiety. *Id.* Moreover, Glickstein reported that Plaintiff's sleep and energy were good. *Id.* On June 11, 2018, Plaintiff had another session with Glickstein. R. 1118. Glickstein reported that Plaintiff's mood was euthymic. *Id.* During the session, Plaintiff reported feeling stable and denied any significant depression, intense anxiety, panic attacks, suicidal ideations, hallucinations, or delusions. *Id.* Plaintiff reported that with her current medication she feels less anxious and moody with improved focus and anxiety. *Id.* On August 3, 2018, Plaintiff attended another session with Glickstein. R. 1123. Plaintiff acknowledged her difficulties with impulse control, frustration, and dealing with crowds. *Id.* She reported sleeping issues, but denied any significant depression, intense anxiety, panic attacks, suicidal ideations, hallucinations, or delusions. *Id.* Plaintiff reported that her medication has been revised and she had been compliant. *Id.*

**II.     Medical Evidence**

**A. David Guttman, M.D.**

On October 9, 2013, Dr. David Guttman conducted an examination of Plaintiff. R. 261. Guttman is a hospital physician. *Id.*  Guttman diagnosed Plaintiff with (1) epilepsy and recurrent seizures; (2) other and unspecified bipolar disorders; (3) anxiety states; and (4) alcohol dependence syndrome. R. 262-263. He noted that Plaintiff's conditions were treated. *Id.* Guttman recommended that Plaintiff undergo psychiatric and neurology treatment. R.264. Guttman noted that Plaintiff was taking Gabapentin and Ambien for her conditions. R. 266. On October 8, 2013, Guttman diagnosed Plaintiff upon examination with (1) epilepsy and recurrent seizures; (2) other

and unspecified bipolar disorders; (3) anxiety states; and (4) alcohol dependence syndrome. R. 361-62. Guttman determined that Plaintiff's functional capacity outcome necessitated "medical limitations to employment that require vocational rehabilitation and/or specialized supports." R. 363.

### B. Artur Mushyakov, M.D.

Upon examination on April 7, 2017, Dr. Artur Mushyakov diagnosed Plaintiff with (1) "other mixed or unspecified drug abuse"; (2) asthma; (3) epilepsy; (4) attention deficit disorder; (5) other specific learning difficulties; and (6) unspecified personality disorder. R. 316-18. Mushyakov opined that Plaintiff was unable to work due to her seizures, asthma, ADHD, chronic mental health conditions, bipolar disorder, learning difficulties, and personality disorder, all of which are expected to last for at least twelve months. R. 319.

### C. Mohammad Shuja, M.D.

On August 22, 2011, Dr. Mohammad Shuja examined Plaintiff. R. 414. Shuja diagnosed Plaintiff with seizure disorder and major depressive and anxiety disorder. R. 420. Shuja elaborated on the diagnosis, explaining that Plaintiff suffered from seizures since the age of two, had been suffering from psychiatric illnesses, and was recently discharged from an inpatient psychiatric unit. R. 419.

### D. Jason E. Cheng, M.D.

On October 17, 2014, Dr. Jason Cheng completed a wellness plan report. R. 745. Cheng noted Plaintiff's diagnoses of bipolar disorder, PTSD, and alcohol depression. *Id*. Cheng recommended that Plaintiff undergo intense psychiatric care to stabilize because she presented manic symptoms and could only tolerate minimal levels of distress. R. 746.

**E.  Jordan Chanler-Berat, M.D. & Jason Swaby. M.D.–Brooklyn Hospital**

On June 27, 2017, Plaintiff presented with dizziness, vomiting, and tremors at Brooklyn Hospital Center. R. 879. Dr. Jordan Chanler-Berat performed an examination and radiology exams on Plaintiff and stabilized her conditions. R. 883-84.

On May 20, 2017, Plaintiff visited Brooklyn Hospital Center for a medical evaluation to return to a shelter after getting into an altercation with another resident. R. 897. Dr. Jason Swaby noted that Plaintiff presented with acute alcohol intoxication with a steady gait and no other trauma. R. 901.

**F.  Neda Bahrouzi, M.D.**

On August 20, 2016, Dr. Neda Bahrouzi examined Plaintiff. R. 1020. Dr. Behrouzi noted that Plaintiff was pregnant. R. 1022. Dr. Behrouzi explained that Plaintiff has a history of bipolar disorder, ADHD, poor appetite, insomnia, PTSD-related symptoms, mild paranoia, and history of substance use. *Id.*  Dr. Behrouzi diagnosed Plaintiff with bipolar affective disorder and bipolar disorder. R. 1023. Plaintiff was prescribed Seroquel and Depakote and referred for counseling, psychoeducation, and a follow-up visit. R. 1022.

On March 8, 2017, April 12, 2017, and June 23, 2017, Plaintiff visited Dr. Behrouzi for follow-up examinations. R. 1001, R. 1007, R. 1009. Dr. Behrouzi's finding were similar to the findings in her August 20, 2016 examination. R. 1001, R. 1007, R. 1009.

**G.  Macia Aitcheson, N.P**

On November 17, 2016, Nurse Practitioner Macia Aitcheson examined Plaintiff for medication management purposes. R. 1017. Aitcheson found that Plaintiff was goal-directed, lucid and oriented to person, time and place. R. 1018. She diagnosed Plaintiff with bipolar affective disorder and bipolar disorder with a current depressive episode. R. 1019. Aitcheson instructed

Plaintiff to schedule a follow-up visit, undergo psychoeducation, complete medication teaching, and follow up with her primary care provider. R. 1018.

### H. Christina Shenko, M.D.

On August 4, 2016, Dr. Christina Shenko examined Plaintiff for her high-risk pregnancy. R. 1049. In relevant part, Shenko diagnosed Plaintiff with bipolar affective disorder with mild depression, problems related to psychosocial circumstances, and bipolar disorder. R.1052.

### I. Diana Teyteman, N.P

On March 26, 2018, Nurse Practitioner Diana Teyteman performed a psychiatric evaluation on Plaintiff. R. 1092. Teyteman diagnosed Plaintiff with mood disorder, bipolar disorder, and cannabis/cocaine/alcohol abuse in remission. R. 1092. Teyteman recommended that Plaintiff be admitted into a mental health facility, undergo individual psychotherapy, a physical exam, and blood work. She prescribed Seroquel and Depakote. R. 1092.

### III.   Opinion Evidence

### A. Medical Opinion Evidence

#### 1.  Allen Meisel, M.D.

On July 20, 2017, Plaintiff visited Dr. Allen Meisel for an internal medicine examination upon referral by the Social Security Administration in connection with her disability claims. R. 861. Meisel noted that Plaintiff had a normal gait and full range of motion in the cervical and lumbar spines. *See* R. 862. Dr. Meisel diagnosed Plaintiff with seizure disorder, asthma, and bipolar disorder with depression. R. 863. With respect to the mental health diagnosis, Dr. Meisel referred Plaintiff to the psychology department. *Id.*

#### 2.  Beth Ehrenpreis, M.D.

Plaintiff visited Dr. Beth Ehrenpreis on July 20, 2017 for a psychiatric evaluation. R. 865. Ehrenpreis noted that Plaintiff's attention and concentration was impaired due to limited intellectual functioning. R. 867. Ehrenpreis noted that Plaintiff's recent and remote memory skills were mildly impaired due to anxiety or limited intellectual functioning. *Id.* Ehrenpreis found that her cognitive functioning was borderline, and her insight was poor. *Id.* Ehrenpreis diagnosed Plaintiff with major depressive disorder and a history of cannabis abuse disorder and alcohol abuse disorder. R. 868. Ehrenpreis noted that intellectual disability testing is required. *Id.*

### 3. Erie T. Agustin, M.D.

On May 7, 2019, Dr. Agustin completed a medical source statement based on his own clinical evaluation and test findings. R.1201. Agustin noted depression as one of Plaintiff's symptoms. *Id.* Agustin reported that Plaintiff's depression, anxiety, and personality disorders affected her pain. *Id.* He opined that Plaintiff would be absent from work more than three times a month as a result of her impairments. R. 1207.

## B. Non-Medical Opinion Evidence

### 1. Michael Kushner, Ph.D

Dr. Michael Kushner performed a psychological evaluation on Plaintiff on October 8, 2018. R. 922. Kushner noted that Plaintiff's attention, concentration, and recent and remote memory skills were impaired. R.923-34. Kushner reported that her cognitive functioning was below average. R.924. He diagnosed Plaintiff with unspecified mood disorder and unspecified anxiety disorder. R. 925. Kushner recommended that Plaintiff continue with psychological and psychiatric treatment. *Id.*

## LEGAL STANDARD

## I. Judicial Review of Commissioner's Determination

A district court reviews the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3) to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard. *Talavera v. Astue*, 697 F.3d 145, 151 (2d Cir. 2012). "Substantial evidence" is "more than a mere scintilla," rather "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (citations omitted).

The substantial evidence standard means that once an ALJ finds facts, a district court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)). In other words, this Court must afford the Commissioner's determination considerable deference, and may not "substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (citations omitted).

## II.     Commissioner's Determination of Disability

### A.  Definition of Disability

A disability, as defined by the Social Security Act, is one that renders a person unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A). Further, "[t]he impairment must be of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national

economy." *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

## B.  Five-Step Analysis of Disability Claims

The Commissioner uses a five-step process to determine whether a claimant has a disability within the confines of the Social Security Act. 20 C.F.R. § 404.1520(a)(4). First, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. *Id*. § 404.1520(a)(4)(i). If so, the Commissioner will find the claimant not disabled. *Id*. Second, if the claimant is not engaged in substantial gainful activity, the Commissioner considers whether the claimant has a "severe medically determinable physical or mental impairment" or a combination of impairments that meets the duration requirement of a continuous period of 12 months. *Id*. § 404.1520(a)(4)(ii); *see also id*. § 404.1509 (establishing duration requirement). Third, if the claimant suffers from such an impairment, the Commissioner determines whether that impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of the Social Security Act regulations. *Id*. § 404.1520(a)(4)(iii); *see also id*., Pt. 404, Subpt. P, App'x 1. If the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's impairment, she has the residual functional capacity ("RFC") to perform her past work. *Id*. § 404.1520(a)(4)(iv). Finally, if the claimant is unable to perform his past work, the Commissioner determines whether there is other work which the claimant could perform. *Id*. § 404.1520(a)(4)(v).

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at steps one through four." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (citations omitted). At step five, however, "the burden shifts to the Commissioner to show that there [are] a significant number of jobs in the national economy that [the claimant] could perform based on his residual functional capacity, age,

education, and prior vocational experience." *Butts v. Barnhart*, 388 F.3d 377, 381 (2d Cir. 2004)

(citing 20 C.F.R. § 404.1560), *amended on reh'g*, 416 F.3d 101 (2d Cir. 2005); *see also* 20 C.F.R.

§ 404.1520(a)(4)(v).

### C.  The ALJ's Decision

First, the ALJ concluded that Plaintiff did not engage in any substantial gainful activity

since May 26, 2017, when she filed her Social Security Assistance application. R.12. Second, the

ALJ found that Plaintiff suffered from the following severe impairments: mood disorder, bipolar

disorder and seizure disorder. *Id.*

Third, the ALJ determined that Plaintiff does not have an "impairment or combination of

impairments that meets or medically equals the severity of one of the listed impairments of 20

CFR Part 404, Subpart P, Appendix 1." *Id.* The ALJ found that Plaintiff's mental impairments

both singly and in combination do not meet or medically equal the criteria for an extreme

impairment. R. 13.

Fourth, the ALJ determined that Plaintiff did not have an impairment or combination of

impairments that meet or medically equals the severity of one of the listed impairments in 20 CFR

Part 404, Subpart P, Appendix 1 because the record does not establish "the medical signs,

symptoms, laboratory findings or degree of the functional limitation required to meet or equal the

criteria of any listed impairment and no acceptable medical source" in order to make findings that

the Plaintiff's impairments medically equal a listed impairment. *Id*. The ALJ found that Plaintiff

has moderate limitations in understanding, remembering, and applying information as well as

interacting with others and concentrating, persisting, and maintaining pace. *Id.* The ALJ found that

Plaintiff had mild limitations for adapting and managing herself. *Id.*

Fifth, the ALJ found that Plaintiff has an RFC to perform light work as defined in 20 CFR 416.967(b). R. 15. The ALJ determined that Plaintiff must avoid working at unprotected heights or with hazardous machinery, and cannot kneel, crawl or climb ropes, ladders and scaffolds. *Id.* Moreover, the ALJ determined that Plaintiff can perform a full range of repetitive rote work with no limits other than occasional close interpersonal contact with supervisors and coworkers and no interpersonal contact with the general public. *Id.* Moreover, the ALJ found that Plaintiff can perform at a job not requiring high volume or fast-paced production quotas. *Id.* The ALJ also determined that Plaintiff is able to sit, stand, and walk for six hours in each eight-hour workday as well as lift and carry up to twenty pounds occasional and ten pounds frequently. *Id.*

Last, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform based on her age, education, work experience, and residual functional capacity. R. 21. These jobs include a table worker or a document preparer. R. 22. Therefore, the ALJ decided that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## DISCUSSION

Marcial argues that the ALJ's decision on her RFC determination was not supported by substantial evidence and failed to properly assess her residual functional capacity. Marcial argues that the ALJ failed to properly evaluate the medical opinion evidence and her objective statements when making her RFC. For the reasons that follow, the Court upholds the ALJ's decision.

### I.    The ALJ Properly Evaluated the Medical Opinion Evidence

Plaintiff argues that the ALJ improperly evaluated the medical opinion evidence. Specifically, Plaintiff argues that the ALJ erred by finding treating psychiatric nurse practitioner

Teytelman's opinion unpersuasive and agreeing with the opinion of the consulting doctors, Ehrenpreis and Kushner.

The Second Circuit has articulated when deference should be given to a treating physician's opinion. *Thomas v. Comm. of Soc. Sec. Admin.*, 479 F.Supp.3d. 66, 81 (S.D.N.Y. 2020). In order to decide whether the opinion is entitled to controlling weight, the ALJ must first determine whether the physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). Then, if the ALJ determines that the opinion is not entitled to controlling weight, the ALJ must decide how much weight to give by explicitly considering the "*Burgess* factors: (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.*

The Court finds that the ALJ correctly held that Teytelman's opinion was inconsistent with other statements in the record stating that Plaintiff could perform all activities of daily living, as well as inconsistent with psychiatric treatment records documenting normal mental status exam findings. Teytelman had diagnosed Plaintiff with a mood disorder and bipolar disorder with poor memory, sleep disturbance, mood disturbance, recurrent panic attacks, paranoia or inappropriate suspiciousness, difficulty thinking or concentrating, emotional lability and social withdrawal or isolation. R. 18. She also described Plaintiff as having an extreme loss of capacity to perform the basic mental activities needed for work, which included the loss of ability to interact appropriately with the public, accept instructions, respond appropriately for supervision, get along with coworkers and peers without distracting them or experiencing behavioral extremes, respond

appropriately to changes in routine work setting, and use public transportation. R. 18.

The Court agrees with the ALJ that these extreme limitations reported by Teytelman were unpersuasive. Teytelman's determination of Plaintiff's limitations are inconsistent with the other findings on the record. For example, Agustin found that Plaintiff had only mild limitations dealing with work stress. R. 1203. Moreover, Ehrenpreis found that Plaintiff's recent and remote memory are only mildly impaired, and that there is only mild evidence of Plaintiff's limitations to understand, remember and carry out simple job instructions. R. 18, 867. Importantly. Dr. Ehrenpreis found *no evidence* of a limitation of Plaintiff's ability to use reasoning and judgment to make work-related decisions. R. 18, 868. Further, Ehrenpreis asserted that Plaintiff only had mild limitations when interacting with the public, coworkers, and supervisors. *Id*.

As the ALJ found, Teytelman's notes—which stated that Plaintiff has extreme limitations using public transportation, interacting in a work setting, interacting with the public, or accepting instructions—directly contradicted the notes of Ehrenpreis, which stated that Plaintiff is able to perform all activities of daily living, that she socializes occasionally, and that she travels by herself. R. 867. Teytelman's opinion is also inconsistent with the opinion of Kushner. Kushner found that Plaintiff's impairments of attention, concentration, recent and remote memory skills, and cognitive functions are not significant enough to interfere with Plaintiff's functions on a daily basis. R. 924-25. Furthermore, Teytelman's treatment records stating that Plaintiff will benefit from pharmacological treatment—which she has received from Teytelman—contradict her own evaluation of Plaintiff's limitations. R. 1199.

Therefore, for the reasons outlined above, the Court agrees with the ALJ that Teytelman's opinion is unpersuasive because it is inconsistent with other evidence in the record.

## II.     The ALJ Properly Evaluated Plaintiff's Subjective Statements

Plaintiff argues that the ALJ erred when determining Plaintiff's subjective complaints about her impairments. The Court agrees with the ALJ that Plaintiff's subjective complaints are not supported by substantial evidence in the record.

When determining disability, the ALJ must evaluate a Plaintiff's subjective statements. Importantly, the ALJ "has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment . . . in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984) (citations omitted). When rejecting a Plaintiff's subjective statements of disability and pain, the ALJ must expressly state reasons for discrediting the Plaintiff's subjective statement and discuss other factors, such as the Plaintiff's prior work history, daily activities, medication dosage. *Beckley v. Apfel,* 152 F.3d 1056, 1060 (8th Cir. 1998). However, the ALJ is not required to accept Plaintiff's subjective statements without question. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

The ALJ expressly stated his reasons in the record for discrediting Plaintiff's subjective statements. Specifically, he explained that her statements were not supported by the medical evidence in the record and he explained that she is able to perform her daily activities. R. 20-21. The ALJ evaluated Plaintiff's subjective statements regarding her mental impairments in light of the medical evidence. The ALJ considered the medical records and evaluations conducted by Kushner and Ehrenpreis when evaluating Plaintiff's subjective statements. Plaintiff reported to Kushner that she is able to dress, do chores, socialize, take public transportation, and listen to music for fun. R. 894. Plaintiff reported to Ehrenpreis that she is able to dress, bathe, and groom herself, as well as take public transportation, socialize, and listen to music. R. 867. These statements by Plaintiff are inconsistent with the statements made at the hearing (*i.e.*, that she does

not socialize, take public transportation, or do chores). Moreover, Plaintiff contradicted herself at the time of her hearing: Plaintiff claimed that she didn't know how to wash her hair, however she was able to wash her hair before she met her wife. R. 72. Therefore, the ALJ correctly discredited Plaintiff's subjective complaints.[3]

## CONCLUSION

For the reasons above, Plaintiff's motion is DENIED, and Defendant's motion is GRANTED. The Clerk of this Court is respectfully directed to terminate the open motions at ECF Nos. 15 and 17, remove this case from the Court's list of social security appeals, and close the case.

**SO ORDERED.**
**Dated: March 31, 2022**
         **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**

---

[3] In response to Plaintiff's allegation about the ALJ's bias towards the Plaintiff, the Court finds that the record does not support such a claim of bias.

18